SUMMERS *v.* SUMMERS.

1. PARENT AND CHILD—CUSTODY—RIGHT TO REMAIN AT HOME.

   While a husband and wife each have a right to different religious views, the wife, on account of religious differences, may not break up the home, take young minor children away from home and refuse the husband the right to visit them.

2. SAME—WRONGFUL REMOVAL OF CHILD FROM HOME—RETURN.

   Where a wife has wrongfully removed young minor children from the home, it is her duty to permit the husband to take them back to the home.

3. DIVORCE—EXTREME CRUELTY—EVIDENCE—CUSTODY OF CHILDREN—COSTS.

   In wife's suit for divorce on the ground of extreme and repeated cruelty where it appears husband struck her face on one occasion and poured soapy water over her at another time and trial judge found that the parties, who had two young children, would have made a "go" of the marriage relation if left to themselves, wife is ordered to permit husband to take the children back to the home from which she had wrongfully taken them, and her bill is dismissed for failure to sustain her claim, no costs being allowed.

Appeal from Wexford; Lamb (Fred S.), J. Submitted January 15, 1946. (Docket No. 91, Calendar No. 43,247.) Decided March 5, 1946.

Bill by Dorothy M. Summers against George W. Summers for a divorce on ground of extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Reversed and bill dismissed.

*Charles H. Miltner,* for defendant.

Reid, J.   Plaintiff wife filed the bill of complaint and from the decree of divorce for the plaintiff, defendant appeals.

The parties were married in the city of Detroit on October 31, 1938.  They have two children, Lincolna Summers, 4 years of age at the time of the hearing, and Chittle Dallas Summers, 3 years of age at the time of the hearing.  Plaintiff is a resident of the city of Cadillac, and has resided in the State of Michigan for upwards of 10 years.

The parties separated about August 16, 1944.  According to defendant's claim, plaintiff and defendant lived happily together until about May 15, 1944. Defendant testified that at that time:

"She criticized me openly and intimated by a series of statements that she was going to leave me. She stated to me that those children were not my children, they were God's children, that the woman always gained custody of the children, and that the Jehovah Witness had never lost a court case. * * * I told her the morning that she left that due to this intense unsettlement physically that I was undergoing that I felt food was not doing me any good, only making me sick, and I was going to fast temporarily until such time as she would promise we would have a united home for our children. She made one attempt to have me join this movement * * * and because I didn't react favorable, she called me 'full of the devil.' That is the occasion that she testified to that I struck her.  I never struck her at any other occasion."

The striking thus referred to by the defendant is described by plaintiff in her testimony as follows:

"He struck me in the face very hard when I reprimanded him for filling a trench around the foundation of the house with manure and leaving it uncov-

ered to call the flies. It didn't knock me over but I saw stars. I cannot remember that he ever repented for it."

Plaintiff testified to one other occasion as follows:

"I reprimanded him for having to wash by hand with a washing machine standing in the house, and he picked up the tub of warm soapy and very dirty water and threw it all over me and I had to change my clothes. The children were very upset by this. He laughed and made fun of me and walked away."

Defendant claims that his improper treatment of his wife on the two occasions just referred to was provoked by her. On the whole, his conduct toward her cannot otherwise be condemned or criticized. Plaintiff complains of want of agreement concerning the children and a want of unified control. We find her complaints in that particular to be without merit.

Unanticipated by defendant, plaintiff took the children from the home of the parties in Belleville to Cadillac on August 11, 1944. The defendant followed her and there arranged with her to have a meeting with the Methodist preacher, in whose presence and at whose solicitation they had a reconciliation. The preacher testified:

"It was evident that there had been tension between the two but, as against that, they still loved each other and loved their children. They agreed to the need of children for both parents to bring them up. * * * There was a fine spirit of understanding, seemingly, on the part of both, and we had prayer about it and fine spirit."

The parties intended to leave Cadillac and return to their home in Belleville. Plaintiff testified:

"I guess I led him to believe I was going back with him. Then my mother and sister came back

that night from a trip and after I had talked the matter over with them I told him I was not going to go with him until I had more time to think it over. * * * My intention to leave my husband *was developed after* my visit home.'' (Italics supplied.)

There are cogent reasons appearing in the testimony in this case for the conclusion that the entire trouble between these parties grows out of the fact that plaintiff is a member of and is greatly influenced by the Jehovah Witness sect, and is also much influenced by her mother, whose home is the meeting place in Cadillac for Jehovah Witnesses. Defendant testified:

''Mr. Chittel tried to persuade Dorothy to go home with me but he was immediately silenced by Mrs. Chittel (plaintiff's mother). I was severely lectured to during the evening of the 16th by Mrs. Chittel, telling me how I should regulate my life.''

It is the manner in which the influence of the Jehovah Witness sect reacts upon plaintiff that really causes the difference between the parties. It is evident that the defendant does not desire to affiliate with the Jehovah Witness sect or cult. The plaintiff has a right to her religious views and the defendant has a right to his religious views, but the plaintiff on account of religious differences is not authorized to break up the home, to take the children away from the home, and to refuse the defendant a right to visit with his children. Plaintiff took the children without right from the home at Belleville to Cadillac. It is plaintiff's duty to permit defendant to take the children back to the home from which she wrongfully took them.

The circuit judge found:

''In the judgment of the court, these young people would have made a 'go' of the marriage relation, if they had been left to themselves.''

We do not consider that the testimony sustains plaintiff's claim. The decree is reversed and the bill of complaint dismissed. No costs are allowed.

A decree may be entered in this court in accordance with this opinion.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, NORTH, and STARR, JJ., concurred.